2014-5134

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

TERESA NAN LUCREE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

Appeal from the United States Court of Federal Claims
in Case No. 14-CV-0308, Judge Charles F. Lettow

---

BRIEF OF DEFENDANT-APPELLEE UNITED STATES

JOYCE R. BRANDA
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:                     FRANKLIN E. WHITE, JR.
                                Assistant Director
HEIDI BOURGEOIS
Office of General Law           MATTHEW P. ROCHE
United States Patent &          Trial Attorney
Trademark Office                Commercial Litigation Branch
                                Civil Division
WILLIAM LaMARCA                 Department of Justice
Office of the Solicitor         P.O. Box 480
United States Patent &          Ben Franklin Station
Trademark Office                Washington, DC 20044
                                Tel: (202) 616-0466
                                Fax: (202) 514-8624
                                Email: Matthew.P.Roche@usdoj.gov


December 1, 2014               Attorneys for Defendant-Appellee

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................. iii

STATEMENT OF RELATED CASES ................................... v

STATEMENT OF JURISDICTION ...................................... 1

STATEMENT OF THE ISSUES .......................................... 1

STATEMENT OF THE CASE ............................................. 2

STATEMENT OF FACTS ................................................... 3

    I.    Statutory Background ........................................... 3

        A.    Patent Maintenance Fees ........................... 3

        B.    The First-Inventor-To-File System ........... 4

    II.    Factual Background ............................................. 5

    III.    Course Of Proceedings Below ........................... 5

SUMMARY OF THE ARGUMENT .................................... 6

ARGUMENT ..................................................................... 8

    I.    Standard Of Review .......................................... 8

    II.    The Trial Court Correctly Held That Congress Has Authority To Legislate Patent Maintenance Fee Requirements, The Imposition Of Which Rationally Relate To The Promotion Of Science And The Useful Arts ........................................................ 9

        A.    The Intellectual Property Clause Does Not Limit Congress Authority To Impose Patent Maintenance Fees ...................... 10

B.      The Imposition Of Patent Maintenance Fees Is A Rational
        Exercise Of Congress' Article I Authority .............................. 12

III.   Ms. Lucree Has Waived Any Appeal Of The Trial Court's Judgment
       Dismissing Her Takings Claim   ....................................................... 15

IV.    Alternatively, The Trial Court Correctly Held That There Is No
       Government Taking When A Patent Expires Due To The Patent
       Holder's Failure To Pay Statutorily Required Fees .......................... 16

V.     The Trial Court Correctly Held That Ms. Lucree Does Not Possess
       Standing To Challenge The First-Inventor-to-File System ............... 17

CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*A & D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014)........................................................... 8

*Arbon Steel & Serv. Co. v. United States*,
315 F.3d 1332 (Fed. Cir. 2003)........................................................... 9

*Boyden v. Commiss'r of Patents*,
441 F.2d 1041 (D.C. Cir. 1971)......................................................... 11

*CardSoft v. Verifone, Inc.*,
769 F.3d 1114 (Fed. Cir. 2014)......................................................... 15

*Eldred v. Ashcroft*,
537 U.S. 186 (2003)............................................................... 12, 20

*Energy Transp. Group, Inc. v. William Demant Holding A/S*,
697 F.3d 1342 (Fed. Cir. 2012)......................................................... 18

*Figueroa v. United States*,
466 F.3d 1023 (Fed. Cir. 2006).................................................. passim

*Figueroa v. United States*,
57 Fed. Cl. 488 (2003) ................................................................ 16

*Giuliani v. United States*,
8 U.S.P.Q.2d 1095 (D. Haw. 1988) ................................................... 10

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)...................................................................... 11

*Korsinsky v. Dudas*,
2007 WL 1073873 (Fed. Cir. Apr. 5, 2007) ..................................... 10, 17

*Korsinsky v. Godici*,
2005 WL 2312886 (S.D.N.Y. Sept. 22, 2005)................................... 16, 17

*Lucree v. United States*,
117 Fed. Cl. 750 (2014) ........................................................................ passim

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................. 18

*Madstad Eng'g, Inc. v. United States Patent and Trademark Office*,
756 F.3d 1366 (Fed. Cir. 2014) ............................................................ passim

*McClurg v. Kingsland*,
42 U.S. 202 (1843) ............................................................................. 11, 20

*McKinney v. Dep't. of Treasury*,
799 F.2d 1544 (Fed. Cir. 1986) ............................................................... 19

*Michels v. United States*,
72 Fed. Cl. 426 (2006) ............................................................................. 17

*Monsanto Co. v. Geertson Seek Farms*,
561 U.S. 139 (2010) ........................................................................... 17, 18

## **STATUTES**

28 U.S.C. § 1295(a)(3) ................................................................................. 1

35 U.S.C. § 102 ....................................................................................... 4, 5

35 U.S.C. § 41 .................................................................................... passim

U.S. Const. art. I, § 8, cl. 8 .................................................................. passim

U.S. Const., art. I, § 8, cl. 18 ............................................................... passim

## **REGULATIONS**

37 C.F.R. §§ 1.362-1.378 ............................................................................ 4

## <u>STATEMENT OF RELATED CASES</u>

The United States is not aware of any other appeal to this Court, or any other appellate court, resulting from the underlying decision in this case.  The United States is also unaware of any other related cases that will directly affect or be directly affected by this Court's decision in this appeal.

2014-5134
_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

TERESA NAN LUCREE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.
_____

Appeal from the United States Court of Federal Claims
in case no. 14-CV-0308, Judge Charles F. Lettow.
_____

BRIEF OF DEFENDANT-APPELLEE UNITED STATES

STATEMENT OF JURISDICTION

This Court possesses jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

STATEMENT OF THE ISSUES

1.      Pursuant to 35 U.S.C. § 41(b), patent holders must pay maintenance fees to the United States Patent and Trademark Office (USPTO) three time during the life of an issued patent to keep it in force.  Failure to pay the maintenance fees within six months of the statutory deadlines results in the expiration of the patent. *Id*. § 41(b)(2).  The patent held by plaintiff-appellant, Teresa Nan Lucree, expired when she failed to pay one of the three maintenance fees.  Did the United States

Court of Federal Claims (the trial court) err in holding that the Intellectual Property Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 8, does not foreclose Congress from requiring the payment of maintenance fees to maintain a patent in force?

2.      Did Ms. Lucree waive her appeal of the trial court's judgment dismissing her takings claim by failing to argue in the text of her brief that the early expiration of her patent due to her failure to pay a statutorily-required maintenance fee constitutes an unconstitutional taking?

3.      Alternatively, did the trial court correctly hold that the expiration of Ms. Lucree's patent due to her failure to pay a statutorily-required maintenance fee did not constitute an unconstitutional taking?

4.      Did the trial court correctly hold that Ms. Lucree lacked standing to challenge the first-inventor-to-file system?

<u>STATEMENT OF THE CASE</u>

This appeal concerns the constitutionality of the long-standing statutory requirement that a patent holder pay maintenance fees to the USPTO to maintain a patent in force.  Ms. Lucree appeals the July 31, 2014 judgment of the United States Court of Federal Claims granting the Government's motion to dismiss the

complaint for failure to state a claim upon which relief could be granted. *Lucree v. United States*, 117 Fed. Cl. 750 (2014). A1-6.[1]

STATEMENT OF FACTS

Ms. Lucree's brief fails to include a statement of facts relevant to the issues submitted for review. In light of this omission, we set forth the relevant facts.

I.    Statutory Background

A.    Patent Maintenance Fees

The Intellectual Property Clause provides Congress with the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. The Necessary and Proper Clause provides Congress with authority to "make all laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States." *Id*. § 8, cl. 18. Pursuant to this authority, Congress mandated that certain fees be paid to the USPTO by patent applicants and holders. *See* 35 U.S.C. § 41. At the outset, a patent applicant must pay a filing fee upon submission of a patent application. *Id.* § 41(a)(1). If the application is allowed, the applicant must then submit an issue fee in order for the application to issue as a patent. *Id.* § 41(a)(4). Thereafter, a

---

[1] "A__" refers to pages of the joint appendix to be filed by plaintiff-appellant.

patentee must pay maintenance fees at three separate time periods to keep an issued patent in force. *Id.* § 41(b) ("The [USPTO] Director shall charge the following fees for maintaining in force all patents . . . at [t]hree years and 6 months after grant . . . at [s]even years and six months after grant . . . at [e]leven years and 6 months after grant.").

If the maintenance fees are not paid within a six-month grace period following each of three time periods provided in the statute (*i.e.*, by the 4th, 8th, and 12th anniversary years of the patent grant), the patent will expire by operation of law. *See id.* § 41(b)(2). Once a patent expires, the USPTO may accept the payment of any required maintenance fees after the six-month grace period "if the delay is shown to the satisfaction of the [USPTO] Director to have been unintentional." *Id.* § 41(c)(1). If the Director accepts payment of the maintenance fees after the six-month grace period, then the patent is revived. *Id.* The USPTO has promulgated regulations implementing these statutory provisions. *See* 37 C.F.R. §§ 1.362-1.378.

B.    The First-Inventor-To-File System

Pursuant to the Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3, 125 Stat. 284, 285 (2011) (codified at 35 U.S.C. § 102) (AIA), in 2011 Congress adopted a "first-inventor-to-file" system for determining filing priority among patent applications. Under this system, "priority will go to the first inventor *to file*

4

*a patent application.* The named inventor must have invented the invention independently and not derived the idea from another." *Madstad Eng'g, Inc. v. United States Patent and Trademark Office*, 756 F.3d 1366, 1368 (Fed. Cir. 2014) (citing 35 U.S.C. § 102). Prior to the enactment of the AIA, the United States operated under a "first-to-invent" system, whereby priority generally was assigned to the patent application of the first inventor, even if that individual was not the first to file an application disclosing the invention. *See* 35 U.S.C. § 102(g) (2006).

II.   Factual Background

Ms. Lucree was the owner of Patent Number 5,791,732, which issued on August 11, 1998. A2. Although she paid the first and second maintenance fees for this patent, she failed to pay the third and final maintenance fee by the time it was due, that is, 11 years and six months after the grant of the patent. *Id.* Following a six-month grace period, the patent expired on August 11, 2010. *Id.* The expiration was eight years earlier than the anticipated lifetime of the patent. She did not dispute her nonpayment or otherwise attempt to revive her patent. *Id.*

III.   Course Of Proceedings Below

Following the early expiration of her patent, Ms. Lucree filed a complaint in the Court of Federal Claims. A11. In her complaint, Ms. Lucree alleged, among other things, that Congress lacked constitutional authority to require patent holders to pay maintenance fees and that the expiration of her patent for failure to pay the

5

maintenance fee was an uncompensated taking of private property in violation of the Fifth Amendment of the Constitution.  A1-2; A26; A30.  She also challenged the constitutionality of the first-inventor-to-file rule.  A6 n.9; A34-35.  Although she admitted that the first-inventor-to-file system "does not pertain to this action," she contended that it is "another example of the USPTO and Congress adopting the European system rather than following the Constitution."  A34-35.

The trial court dismissed Ms. Lucree's complaint in its entirety.  A6.  The court held that the requirement to impose patent maintenance fees was within the power granted to Congress by the Intellectual Property Clause, A5, and that the expiration of Ms. Lucree's patent due to her failure to pay a required maintenance fee "did not constitute a taking by the government, but rather was consequence for her failure to fulfill the requirements upon which her patent was conditioned," A6.  The court also held that Ms. Lucree failed to establish standing to challenge the first-inventor-to-file system.  A6 n.9.  The court noted that even if she had standing to bring this argument, it "would fail on the merits, given the court's deference to congressional discretion over patent legislation."  *Id.*

## SUMMARY OF THE ARGUMENT

Ms. Lucree's appeal of the trial court's judgment posits an entirely untenable reading of the Intellectual Property Clause.

Ms. Lucree challenges the constitutionality of statutes requiring payment of patent maintenance fees and the provisions that implement a first-inventor-to-file system for establishing patent application priority.  But these statutes fall squarely within Congress' broad Article I powers to legislate in the area of intellectual property.  Pursuant to the Intellectual Property Clause, Congress is left with the discretion to devise a patent system that it deems will best "promote the Progress of Science and useful Arts."  U.S. Const. art. I, § 8, cl. 8.

Ms. Lucree has not shown, and cannot show, that the Constitution prohibits Congress from establishing a fee structure to support the administration of the patent system that includes the payment of maintenance fees.  By doing so Congress allows inventors to spend fewer resources on less successful inventions, as the inventor has the option of permitting a commercially unsuccessful patent to lapse rather than paying maintenance fees.  As the trial court held, Congress' determination to take this approach is rationally related to the promotion of scientific progress and, therefore, is within the authority granted to Congress by Article I of the Constitution.

Ms. Lucree also appeals the trial court's judgment dismissing her takings claim.  Yet by providing in the text of her brief only skeletal assertions that the early expiration of her patent due to her failure to pay a statutorily-required maintenance fee was an unconstitutional taking, she has waived her right to appeal

this issue.  Alternatively, the trial court properly held that Ms. Lucree's property interest in her patent was subject to the conditions set by Congress, including the requirement to pay fees.  Therefore, there was no taking once her patent lapsed as a result of her maintenance fee nonpayment.

Finally, Ms. Lucree cannot demonstrate standing to bring her challenge to the first-inventor-to-file system.  She has not pointed to, and cannot point to, any actual or imminent injury that she sustained as a result of Congress' adoption of the system.  Even if she were able to demonstrate standing, the trial court correctly noted that her challenge would fail on the merits.  Nothing in the Constitution prohibits Congress from establishing a first-inventor-to-file system for establishing priority of applications among multiple inventors who independently conceive the same invention.

At bottom, Ms. Lucree's arguments before this Court simply reflect her disagreements with Congress' policy determinations.  Her policy preferences do not establish any error in the trial court's decision.

ARGUMENT

## I.    <u>Standard Of Review</u>

This Court reviews a grant or denial of a Court of Federal Claims Rule 12(b)(1) motion to dismiss *de novo*.  *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1150 (Fed. Cir. 2014).  Relatedly, this Court reviews questions of

8

statutory and constitutional interpretation without deference to the trial court's opinion. *Arbon Steel & Serv. Co. v. United States*, 315 F.3d 1332, 1334 (Fed. Cir. 2003). Legislation enacted under the Intellectual Property Clause and the Necessary and Proper Clause is subject to judicial review only to ensure that Congress had a rational basis for its policy choices. *Figueroa v. United States*, 466 F.3d 1023, 1032 (Fed. Cir. 2006). Standing is a jurisdictional question, and is also subject to *de novo* review. *See, e.g.*, *Madstad*, 756 F.3d at 1371.

II.    **The Trial Court Correctly Held That Congress Has Authority To Legislate Patent Maintenance Fee Requirements, The Imposition Of Which Rationally Relate To The Promotion Of Science And The Useful Arts**

As a threshold matter, this Court's decision in *Figueroa* governs Ms. Lucree's challenge to Congress' authority to legislate patent maintenance fees. That case involved a nearly identical challenge to the constitutionality of patent fees on the ground that those fees exceed the cost of operating the USPTO. *Figueroa*, 466 F.3d at 1030-32. Although the Court did not address the specific issue of *maintenance* fees, the Court stated that patent fees "have been an accepted condition of patentability since the first patent statute was enacted in 1790. Funding the patent system with patent fee revenue is clearly within Congress's authority." *Id.* at 1031 (internal citation omitted). Ms. Lucree has no explanation for why this Court's holding in *Figueroa* should not apply with equal force to the limited issue of patent maintenance fees.

9

Moreover, this Court specifically addressed the constitutionality of patent maintenance fees in an unpublished opinion that held that "maintenance fees and the patent system put in place by Congress and the PTO do not conflict with the Constitution." *Korsinsky v. Dudas*, No. 2007-1029, 2007 WL 1073873, at \*3 (Fed. Cir. Apr. 5, 2007); *see also Giuliani v. United States*, 8 U.S.P.Q.2d 1095 (D. Haw. 1988) ("Given the plenary authority of Congress to act in the area of patents, Congress has authority to prescribe fees for . . . maintaining a patent in force."), *aff'd*, 878 F.2d 1444 (Fed. Cir. 1989) (table).  Application of this law confirms that the trial court correctly held that the Intellectual Property Clause does not limit Congress' authority to impose patent maintenance fees, and that the imposition of such fees "rationally relate to the promotion of scientific progress." A5.

A.     The Intellectual Property Clause Does Not Limit Congress' Authority To Impose Patent Maintenance Fees

The Intellectual Property Clause of the United States Constitution provides, in relevant part, that "Congress shall have the power . . . [t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries[.]"  U.S. Const., art. I, § 8, cl. 8.  Pursuant to the Necessary and Proper Clause, Congress is vested with authority to "make all Laws which shall be necessary and proper for carrying

into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States." *Id*. § 8, cl. 18.

Together, these clauses provide Congress with a broad constitutional grant to legislate pursuant to its intellectual property power. Indeed, "the powers of Congress to legislate upon the subject of patents is plenary by the terms of the Constitution." *McClurg v. Kingsland*, 42 U.S. 202, 206 (1843).

Within this broad constitutional grant, Congress may select the policies and practices that in its judgment best effectuate the constitutional aim of promoting science and the useful arts and may, in turn, impose conditions upon a right to a patent, including requiring fees. *Graham v. John Deere Co.*, 383 U.S. 1, 6 (1966) ("Congress may set out conditions and tests for patentability."); *Boyden v. Commiss'r of Patents*, 441 F.2d 1041, 1043-44 (D.C. Cir. 1971) ("No person has a vested right to a patent, but is privileged to seek [patent protection] only upon compliance with the conditions which Congress has imposed. That rule applies to the payment of fees required for the administration of the patent laws just as it demands compliance with other conditions, statutorily imposed." (internal citation omitted)). It follows, therefore, that the trial court correctly held that Congress possesses authority to impose patent maintenance fees.

Although Ms. Lucree challenges Congress' authority to impose maintenance fees, she offers no meaningful arguments in support of her challenge other than to

assert that congressional legislation imposing patent fees is subject to constitutional limitations — a proposition that is not in dispute.  Applnt. Br. at 10.

To the extent that she contends that Congress does not possess authority to impose patent maintenance fees "when the Patent Office does nothing but pay the cost of collecting the fees," *id*., this argument is without merit.  *Figueroa*, 466 F.3d at 1031.  Ms. Lucree fails to establish any error by the trial court, and its judgment should be affirmed.

B.     The Imposition Of Patent Maintenance Fees Is A Rational Exercise Of Congress' Article I Authority

In evaluating the constitutionality of legislation passed pursuant to Congress' Article I authority, the Court must "accord great deference to Congress's policy determinations."  *Figueroa*, 466 F.3d at 1031-32.  The Court's review is limited to determining whether legislation is a "rational exercise of the legislative authority conferred by the [Intellectual Property] Clause."  *Eldred v. Ashcroft*, 537 U.S. 186, 204 (2003).

Applying this deferential standard of review, the trial court correctly explained that, "[g]iven the broad terms of the Intellectual Property Clause of the Constitution, any condition Congress imposes on patents need only be rationally related to the promotion of progress in science and the useful arts to survive judicial scrutiny."  A5.  The trial court considered applicable legislative history,

which demonstrated that Congress devised the patent maintenance fee system to provide patent holders the option of permitting a patent to lapse if it does not prove commercially valuable, thereby reducing the initial investment required to obtain a patent. *See* A5 n.6 (quoting H.R. Rep. No. 96-1307(I), at 4-5 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463-64). The trial court then correctly held that the imposition of patent maintenance fees "rationally relate[d] to the promotion of scientific progress." A5.

Shunting aside this Court's deferential review, Ms. Lucree erroneously contends that the expiration of patents due to the failure of patent holders to pay maintenance fees shows that the imposition of patent maintenance fees in 35 U.S.C. § 41(b) is not rationally related to Congress' Intellectual Property Clause authority to promote progress in science and the useful arts. Applnt. Br. at 15.

To the contrary, the statute's legislative history shows that the rationale for shifting some of the costs associated with administering the patent system to maintenance fees was to allow inventors to spend fewer resources on less successful inventions by reducing the fees required during the patent's application and issuance periods. The pertinent legislative history provides, as follows:

> In order further to soften the impact on small business and individual inventors, the fees are to be paid in four installments over the life of the patent. This system, known as maintenance fees, is in use in most advanced industrial nations and has the advantage of deferring payment until the invention begins to return revenue to

13

> the inventor.  Should the invention prove to have no
> commercial value, the inventor has the option of
> permitting the patent to lapse, thus avoiding further fees.

H.R. Rep. No. 96-1307(I) at 4-5.  In other words, Congress deemed it necessary

and proper to implement maintenance fees as a way to promote the filing of patent

applications.  This is a rational basis.  Even if it were not, "it was rational for

Congress to impose [maintenance] fees to fund the overall patent system."

*Figueroa*, 466 F.3d at 1032.

The imposition of patent maintenance fees represents, therefore, a rational

exercise of the authority granted to Congress pursuant to the Intellectual Property

Clause, art. I, sec. 8, cl. 8, and the Necessary and Proper Clause, art. I, sec. 8, cl.

18.  Consequently, the trial court correctly upheld the constitutionality of 35 U.S.C.

§ 41(b) as rationally relating to a legitimate congressional objective.  A5.  Ms.

Lucree's arguments to the contrary do not change this result.

Ms. Lucree erroneously contends that patent maintenance fees are

unconstitutional because an allegedly high rate of expired patents does not promote

progress in science and the useful arts.  A15.  But this argument is inapposite, as it

expresses only her disapproval of Congress' decision to allow patents to expire for

failure to pay the fees.  It does not address the rationality of the challenged law.

*See Figueroa*, 466 F.3d at 1032 (explaining that the proper test is whether "there is

a rational basis on which Congress *could* conclude that the level of fees served legitimate congressional objectives").

Ms. Lucree's mere disagreement with Congress' policy determinations is insufficient to prevail on rational basis review. *Id*. Ms. Lucree's extended policy exercise does not establish any error by the trial court.

III.  Ms. Lucree Has Waived Any Appeal Of The Trial Court's Judgment Dismissing Her Takings Claim

To the extent that Ms. Lucree appeals the trial court's judgment dismissing her takings claim, she has waived her appeal by including only a skeletal assertion of that issue in her brief. Although her statement of the issues includes whether the trial court erred in holding that the early expiration of her patent did not constitute a taking by the Government, Applnt. Br. at 3, she never raises this issue in the text of her brief other than to assert that her complaint alleges a takings claim. *See* Pet Br. at 5-6, 12. Other than those conclusory assertions, she does not present a coherent argument, or any argument, explaining why the trial court was wrong or otherwise developing this issue. "Arguments that are not appropriately developed in a party's briefing may be deemed waived." *CardSoft v. Verifone, Inc.*, 769 F.3d 1114, 1119 (Fed. Cir. 2014). Consequently, she has effectively waived her appeal of this issue.

IV.   Alternatively, The Trial Court Correctly Held That There Is No Government Taking When A Patent Expires Due To The Patent Holder's Failure To Pay Statutorily Required Fees

Alternatively, even if Ms. Lucree has not waived her appeal of this issue, the trial court's judgment should still be affirmed.  The trial court properly held that there is no Government taking when a patent expires due to the patent holder's failure to pay the maintenance fees.  As the trial court explained, the patent privilege established by Congress does not exist independent of the payment of the fees upon which Congress conditioned the privilege.  A5-6.  Therefore, "the early expiration of her patent did not constitute a taking by the government, but rather was [a] consequence for her failure to fulfill the requirements upon which her patent was conditioned."  A6.

Although this Court has not addressed this issue, other trial court decisions provide persuasive authorities for the proposition that the early expiration of a patent for failure to pay maintenance fees does not constitute a Government taking. In *Figueroa v. United States*, 57 Fed. Cl. 488, 503 (2003), the court explained that a patent owner lacks an "independent property interest [in a patent] apart from satisfying all conditions imposed by Congress."  Thus, when maintenance fees are not paid, "it is not that plaintiff's personal property is taken away . . . but rather the conditions of the privilege are no longer satisfied."  *Id*. at 502-03.  *Accord Korsinsky v. Godici*, No. 05 Civ 2791, 2005 WL 2312886, at *6 (S.D.N.Y. Sept.

16

22, 2005) (holding plaintiff "does not retain a property interest in the Patent, because he failed to comply with mandatory conditions for the Patent's existence" when he failed to pay the required maintenance fee), *aff'd*, No. 2007-1029, 2007 WL 1073873 (Fed. Cir. Apr. 5, 2007) (unpublished).  Similarly, in *Michels v. United States*, 72 Fed. Cl. 426 (2006), the Court of Federal Claims held that "the expiration of plaintiff's patent did not constitute a taking of any property right held by plaintiff but was rather a result of her failure to meet a requirement upon which her property interest in the patent was conditioned."  *Id.* at 431.

Because there is no taking of property when a patent expires due to failure to pay maintenance fees, the trial court's judgment should be affirmed.

## V.  The Trial Court Correctly Held That Ms. Lucree Does Not Possess Standing To Challenge The First-Inventor-to-File System

Finally, Ms. Lucree challenges the constitutionality of the first-inventor-to-file system for establishing priority among patent applications that disclose the same invention.  Applnt. Br. at 16-18.  The trial court properly held, however, that Ms. Lucree lacks standing to bring this argument.  A6 n.9.

"To satisfy the minimum standing requirements of Article III, a party must demonstrate an injury in fact that is:  (1) 'concrete, particularized, and actual or imminent'; (2) 'fairly traceable to the challenged action'; and (3) 'redressable by a favorable ruling.'"  *Madstad*, 756 F.3d at 1371 (quoting *Monsanto Co. v. Geertson*

*Seek Farms*, 561 U.S. 139, 149 (2010)).  As the "party invoking federal

jurisdiction," Ms. Lucree has the "burden of establishing each of these elements."

*Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Ms. Lucree's complaint essentially concedes that she does not possess

standing to challenge the first-inventor-to-file system.  Indeed, she admits that the

change from a first-to-invent system to a first-inventor-to-file system "does not

pertain to this action," but was offered merely as "another example of the USPTO

and Congress adopting the European system rather than following the

Constitution."  A34-35.  Any alleged injury, therefore, is entirely speculative, and

her challenge fails for this reason alone.  *Madstad*, 756 F.3d at 1376-77.

Ms. Lucree argues for the first time on appeal that she has standing to

challenge the first-inventor-to-file system because she "is currently working on

improvements to her invention and will likely file a Patent Application," and that

through her role in an inventors association "she has the obligation to protect the

member's inventions."  Applnt. Br. at 16.  These arguments are unavailing.

As an initial matter, Ms. Lucree waived these arguments by not raising them

below.  *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342,

1357 (Fed. Cir. 2012) ("This court will not consider arguments raised for the first

time on appeal.").  In any event, her standing arguments are meritless.

Ms. Lucree's statement that she "will likely file a Patent Application" is wholly insufficient to demonstrate the type of concrete and particularized injury required for standing purposes. *See Madstad*, 756 F.3d at 1376-77 ("[M]erely testifying that he intends to file for another patent at some unknown point in the future is not enough to meet the concrete, particularized, and actual or imminent injury requirement." (citation omitted) (internal quotation marks omitted)).

Similarly, Ms. Lucree cannot establish standing simply by asserting that, as an "Officer of the Edison Inventors Association, she has the obligation to protect the member's inventions." Applnt. Br. at 16. In the absence of evidence that she — or even a single association member — has filed, or is "preparing to file, a patent application in the first-inventor-to-file system," *Madstad*, 756 F.3d at 1376, any claimed injury is entirely hypothetical. For the same reason, she cannot rely upon any of the limited exceptions to the general prohibition against third-party standing, such as association standing. *McKinney v. Dep't. of Treasury*, 799 F.2d 1544, 1550 (Fed. Cir. 1986) ("The Supreme Court has also recognized that an organization may have standing to assert the claims of its members, . . . But this doctrine does not vitiate the injury requirement imposed by Article III, for the organization derives its standing in part by showing that its members have incurred an actual or threatened injury." (citation omitted)). In any event, Ms. Lucree brought her claim on behalf of herself, not the inventor's association.

Regardless, as the trial court correctly explained, even if Ms. Lucree did have standing to assert this claim, it would still fail on the merits because Congress' power to "legislate on the subject of patents is plenary by the terms of the Constitution." *McClury*, 42 U.S. at 206.

The gravamen of her challenge is that the text of the Intellectual Property Clause "grants Congress the power to secure exclusive rights . . . to inventors, not winners of the race to the Patent Office." Applnt. Br. at 8. But the Intellectual Property Clause does not dictate how to determine priority among competing patent applications. As a textual matter, therefore, the Intellectual Property Clause does not foreclose Congress from adopting a first-inventor-to-file system.

Ms. Lucree also complains that "proponents of the change from 'First to Invent' to 'First to File' argued that it is important for the U.S. to harmonize its patent laws with the rest of the world." *Id*. at 16. To the extent that Congress deemed harmonizing our patent system with international standards to be necessary and proper to promote science and the useful arts, this was an entirely rational exercise of Congress' legislative authority. *Eldred*, 537 U.S. at 204.

Ms. Lucree's remaining arguments consist of a protracted exercise in speculation, based largely on irrelevant reports, about the supposed harms created by Congress' "adoption of another European Patent policy." Applnt. Br. at 16.

Her policy pronouncements, however, are not germane to this Court's review.  The

trial court did not err in rejecting her arguments.

<u>CONCLUSION</u>

For the foregoing reasons, the judgment of the Court of Federal Claims

should be affirmed.

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

<u>/s/ Franklin E. White, Jr.</u>
FRANKLIN E. WHITE, JR.
Assistant Director

| OF COUNSEL: | <u>/s/ Matthew P. Roche</u> |
| HEIDI BOURGEOIS | MATTHEW P. ROCHE |
| Office of General Law | Trial Attorney |
| United States Patent & | Commercial Litigation Branch |
| Trademark Office | Civil Division |
| | Department of Justice |
| WILLIAM LaMARCA | P.O. Box 408 |
| Office of the Solicitor | Ben Franklin Station |
| United States Patent & | Washington, D.C. 20044 |
| Trademark Office | Tele: (202) 616-0466 |
| | Fax: (202) 514-8624 |
| | Matthew.P.Roche@usdoj.gov |

December 1, 2014                    Attorneys for Defendant-Appellee

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief was prepared using Microsoft Word Times New Roman 14-point font. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief. According to the word count, this brief contains 4,885 words.

/s/ Matthew P. Roche
MATTHEW P. ROCHE

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 1st day of December, 2014, a copy of the foregoing

### BRIEF OF DEFENDANT-APPELLEE UNITED STATES

was filed electronically.

__X__ This filing was served electronically to all parties by operation of the Court's electronic filing system.

_____/s/ Matthew P. Roche_____

_____ I caused a copy of this filing to be served via:

_____ hand delivery

_____ mail

_____ third-party commercial carrier for delivery within 3 days

_____ electronic means, with the written consent of the party being served

To the following address:

_____